**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**NATIONAL LIABILITY & FIRE
INSURANCE COMPANY,**

      Plaintiff,

v.                                       **CIVIL ACTION NO.: 3:14-CV-38
(GROH)**

**MATT'S AUTO WORLD PREOWNED
CARS, LLC; PRESTON MILLER;
SANDY WOODWARD; and CHRISTINE
SMITH,**

      Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING MOTION TO STRIKE AND MOTION FOR DEFAULT JUDGMENT

This matter is before the Court for consideration of Plaintiff National Liability & Fire Insurance Company's ("National Liability") Motion to Strike [ECF 32] and Motion for Default Judgment [ECF 26], filed on November 12, 2014. For the following reasons, the Court **GRANTS** this motion.

### I. Background

This case concerns a garage insurance liability policy, policy number 73GHS025544, with effective dates July 1, 2013 through July 1, 2014 ("the Policy") that National Liability issued to Matt's Auto World Preowned Cars, LLC ("Matt's Auto World"). During the term of this policy, two civil actions were initiated in West Virginia state court: <u>Christine Smith v. Matt's Auto World Preowned Cars, LLC and Preston Miller</u>, Civil Action No. 14-C-19 filed in the Circuit Court of Berkeley County, West Virginia on January 13, 2014 and <u>Sandy Woodward v. Matt's Auto World Preowned Cars, LLC</u>, Civil Action No. 14-C-52 filed in the

Circuit Court of Jefferson County, West Virginia on February 10, 2014.

The Smith action alleges the following concerning Smith's purchase of a vehicle from Matt's Auto World. Smith made a down payment on the vehicle, agreed to a payment plan and obtained car insurance. Preston Miller was the salesman for the transaction. He told Smith she needed to pay for tags and taxes when she had already paid that fee. He also did not complete an odometer certification. In addition, Miller told Smith that the transaction included a limited warranty where Matt's Auto World would cover 50% of parts and labor. Smith later realized the warranty only covered 25% of parts and labor.

On October 5, 2013, Smith notified Matt's Auto World that the vehicle was leaking antifreeze, overheating, not working well and had a blown head gasket. Miller contracted with Smith's boyfriend to repair the head gasket, but refused to pay for new parts and did not compensate Smith's boyfriend for the repair. When the vehicle continued to leak antifreeze and run poorly, Smith contacted Matt's Auto World again. On October 25, 2013, Miller called Smith and told her to bring the vehicle in for a diagnostic inspection. Smith did so, and Miller worked on the vehicle without Smith's permission. Miller called Smith and told her to pick up her car and that she owed $100. Smith asked Miller about the charges. Miller refused to tell Smith about the work he performed. Smith went with her sister to Matt's Auto World to retrieve the vehicle. There, Smith refused to pay Miller without a receipt delineating the work performed. Miller became enraged, insulted Smith and her sister and refused to release the vehicle. Smith left and called the police. The police escorted Smith to Matt's Auto World. Miller demanded $100 from Smith, which Smith paid. After accepting payment, Miller stated he had repaired the radiator cap. Then, Smith retrieved the vehicle. The vehicle had a broken passenger side mirror, scratches on its

side, the old radiator cap and a leaky radiator. Smith's boyfriend purchased a new radiator cap and installed it, which fixed the vehicle.

Around this same time, Smith called Miller to ask if she could make a weekly payment a few days late on October 30, 2013. Miller agreed to this arrangement. However, on October 29, 2013, Smith discovered that her vehicle was not in her driveway because Matt's Auto World had taken it. Smith reported the vehicle stolen to the police. Miller claimed that he repossessed the vehicle because she lacked full insurance coverage as required by the sales agreement. No such requirement existed. Miller also would not tell Smith her vehicle's location, so Smith went to Matt's Auto World to get it. There, Miller took Smith to the vehicle. Smith saw that the vehicle now had a damaged bumper. Miller told Smith to remove her belongings from the car. After Smith did so, Smith stated she would obtain full insurance coverage and return the next day. Miller responded that he did not have to refund Smith for the vehicle. To date, he has not refunded any of her money or returned the vehicle.

Based on these allegations, Smith asserted eleven claims against Matt's Auto World and Miller: (1) violation of the Truth in Lending Act ("TILA"); (2) conversion; (3) West Virginia Consumer Credit and Protection Act ("WVCCPA") violations; (4) Fair Debt Collection Act violations; (5) unlawful repossession under the Uniform Commercial Code ("UCC"); (6) breach of contract; (7) breach of express warranty; (8) Federal Odometer Act violations; (9) fraud and constructive fraud; (10) intentional infliction of emotional distress ("IIED"); and (11) conspiracy.

As for the Woodward action, it alleges the following concerning Woodward's purchase of a van from Matt's Auto World. Before the sale, Matt's Auto World stated that

the van was in good condition. When purchasing the van, Woodward traded in another car for $300, agreed to a payment plan and obtained car insurance. The transaction included a warranty covering 25% of parts and labor.

After Woodward brought the van home, it stopped running. Woodward called Matt's Auto World, and Matt's Auto World towed the van to its location. Matt's Auto World installed a new transmission in the van without Woodward's approval. Matt's Auto World required Woodward to pay for the repair without a discount for parts and labor. Woodward paid this amount and retrieved the van. The van still had trouble running, so Woodward brought it back to Matt's Auto World a few weeks later. Matt's Auto World installed a used alternator and charged Woodward for the repair without a discount for parts and labor. Woodward retrieved her van after making this payment, and the van broke down. After the breakdown, Woodward asked Matt's Auto World for a new vehicle. Matt's Auto World stated it would cost $300 to trade the van in. Woodward rejected this offer. Then, Preston Miller asked Woodward what type of car insurance she had and suggested that she purchase full coverage so that he could take the van out back and report it totaled to the insurance company. Woodward refused to do so. The van has not run since then.

Based on these allegations, Woodward asserted seven claims against Matt's Auto World: (1) violation of the TILA; (2) WVCCPA violations for fraudulent or misleading representations; (3) WVCCPA violations for unfair collections practices; (4) Fair Debt Collection Act violations; (5) breach of express warranty; (6) Federal Odometer Act violations; and (7) fraud and constructive fraud.

National Liability is currently defending Matt's Auto World and Miller in the <u>Smith</u> and <u>Woodward</u> cases under a reservation of rights. On April 4, 2014, National Liability initiated

4

this declaratory judgment action by filing a complaint against Woodward, Smith, Matt's Auto World and Miller seeking the following relief: (1) a declaration that there is no insurance coverage for Matt's Auto World and Miller under the Policy for the conduct alleged in the state lawsuits; (2) a declaration that the Policy does not obligate National Liability to defend or indemnify Matt's Auto World or Miller for any judgments awarded against them in the state lawsuits; and (3) an order authorizing National Liability to withdraw from its defense of Matt's Auto World and Miller in the state lawsuits.

After National Liability filed its complaint, Woodward and Smith waived service of the summons with an answer or Federal Rule of Civil Procedure 12 motion due sixty days from April 9, 2014. Matt's Auto World and Miller were served on May 28, 2014.

On October 14, 2014, National Liability moved for default judgment and summary judgment. The Court denied these motions without prejudice, finding default judgment inappropriate absent the clerk's entry of default and summary judgment premature without adequate time for discovery.

Following that Order, Darryl Palmer, a non-lawyer, filed two motions seeking to act on behalf of Matt's Auto World, a motion for appointment of counsel and a motion for sanctions against National Liability. The Court denied these motions because a corporation cannot proceed *pro se*. Then, on October 30, 2014, National Liability filed a request for the clerk to enter default. On November 7, 2014, the clerk entered default against all defendants.

Shortly thereafter, on November 12, 2014, Darryl Palmer moved for an extension of time to obtain counsel. That same day, National Liability filed the instant Motion for Default Judgment. This motion includes correspondence from counsel for Woodward and

5

Smith stating that they do not oppose a default judgment. On November 13, 2014, the Court denied Darryl Palmer's motion, again based on the need for Matt's Auto World to appear by counsel. On December 2, 2014, counsel appeared on behalf of Matt's Auto World. On February 12, 2015, Matt's Auto World filed an answer to the complaint without seeking leave of court. National Liability filed a Motion to Strike the answer. To date, Matt's Auto World has not responded to any motion filed in this case.

## II. Standards of Review

### A. Motion to Strike

Federal Rule of Civil Procedure 12(f) provides that the court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike are generally disfavored and infrequently granted because it is a "drastic remedy." Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001) (internal citations and quotations omitted) (noting that "Rule 12(f) motions are generally viewed with disfavor 'because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic'").

### B. Motion for Default Judgment

Federal Rule of Civil Procedure 55 authorizes the entry of a default judgment "when a defendant fails to plead or otherwise defend in accordance with the Rules." United States v. Moradi, 673 F.2d 725, 727 (4th Cir. 1982). The clerk's entry of default provides notice to the defaulting party prior to the entry of default judgment by the court. Carbon Fuel Co. v. USX Corp., Civil Action No. 97-1995, 1998 WL 480809, at *2 (4th Cir. Aug. 6, 1998). After the entry of default, the non-defaulting party may move the court for default judgment under Rule 55(b). Id. Doing so is necessary where, as here, the plaintiff's claim is not for

a sum certain or made certain by computation. Fed. R. Civ. P. 55(b)(2). In addition, upon default, all of the well-pleaded facts alleged in the complaint as to liability are deemed admitted. Ryan v. Homecoming Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001). A default judgment, however, "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

### III. Discussion

#### A. Motion to Strike

Considering the motion to strike, Matt's Auto World was served with the summons and complaint on May 28, 2014. Its answer therefore was due on June 18, 2014, approximately eight months before Matt's Auto World filed it. See Fed. R. Civ. P. 12(a)(1). The clerk entered default on November 7, 2014. Matt's Auto World answered the complaint approximately three months after the entry of default and two months after its counsel appeared.

A court may strike an untimely answer under Rule 12(f). Romero v. Barnett, Civil Action No. DKC 09-2371, 2011 WL 1938147, at *1 (D. Md. May 20, 2011). Courts have declined to do so when the dilatory party took other actions in the case indicating it was defending against the suit. See, e.g., Wynes v. Kaiser Permanente Hospitals, Civil Action No. 2:10-CV-00702-MCE, 2013 WL 2449498, at *1 (E.D. Cal. June 5, 2013) (declining to strike untimely answer in light of the filing party's active prosecution of the matter and "a strong judicial preference for resol[v]ing cases on their merits"); Romero, 2011 WL 1938147, at *2; Canady v. Erbe Elektromedizin GmbH, 307 F. Supp. 2d 2, 8 (D.D.C. 2004). Matt's Auto World has taken no action in this case other than filing an answer and has not explained its delay. Accordingly, the Court finds good cause to grant the motion to strike

7

and orders the answer stricken.

### B. Motion for Default Judgment

To dispose of the Motion for Default Judgment, the Court must analyze whether National Liability properly served the defendants and, if so, consider whether National Liability is entitled to the relief requested.

#### 1. Proper Service

In this case, Woodward and Smith waived service pursuant to Federal Rule of Civil Procedure 4(d). Miller was personally served on May 28, 2014 in accordance with Federal Rule of Civil Procedure 4(e)(2)(A). Matt's Auto World was served through Lauren Palmer, who is designated by law to accept service on its behalf, on May 28, 2014 at the location of Matt's Auto World pursuant to Federal Rule of Civil Procedure 4(h)(1)(B). Accordingly, because service was proper on all defendants, a default judgment is appropriate. Am. Select Ins. Co. v. Taylor, 445 F. Supp. 2d 681, 684 (N.D.W. Va. 2006).

#### 2. Entitlement to Relief Requested

The Court now considers whether National Liability is entitled to the two declarations sought–that the Policy does not cover the conduct alleged in the state cases and that National Liability has no duty to defend or indemnify Matt's Auto World or Miller in those cases–and an order authorizing National Liability to cease defending Matt's Auto World and Miller in the cases.

This analysis focuses on whether National Liability has a duty to defend, indemnify or both under the Policy. Aetna Cas. & Sur. Co. v. Pitrolo, 342 S.E.2d 156, 161 (W. Va. 1986). An insurer's duty to defend is broader than its duty to indemnify. Id. at 160. The "duty to defend is tested by whether the allegations in the plaintiff's complaint are

8

reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy." Id.

Where, like here, the facts are undisputed, "[d]etermination of the proper coverage of an insurance contract . . . is a question of law." Syl. Pt. 1, Tennant v. Smallwood, 568 S.E.2d 10, 11 (W. Va. 2002). "Language in an insurance policy should be given its plain, ordinary meaning." Syl. Pt. 1, W. Va. Fire & Cas. Co. v. Stanley, 602 S.E.2d 483, 486 (W. Va. 2004) (citation and quotation marks omitted). Thus, "[w]here the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." Syl. Pt. 2, id. (citation and quotation marks omitted). However, "[w]henever the language of an insurance policy provision is reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning, it is ambiguous." Syl. Pt. 3, id. (citation and quotation marks omitted). "[A]ny ambiguities in the language of insurance policies must be construed liberally in favor of the insured." Pitrolo, 342 S.E.2d at 160. The complaint's factual allegations need not, however, "specifically and unequivocally make out a claim within the coverage." Id. But, if the complaint's claims "are entirely foreign to the risks covered by the insurance policy, then the insurance company is relieved of its duties under the policy." Bowyer v. Hi-Lad, Inc., 609 S.E.2d 895, 912 (W. Va. 2004).

Here, the Policy's insuring agreement provides:

> We pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies caused by an "accident" and resulting from "garage operations" other than the ownership, maintenance or use of covered autos".

9

> We have the right and duty to defend any "insured" against a "suit" asking for these damages. However, we have no duty to defend an "insured" against a "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

By these terms, the Policy covers "bodily injury" or "property damage" caused by an "accident" resulting from "garage operations."

The Policy states that "'[a]ccident' includes continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage.'" This is not a specific definition of "accident." The Supreme Court of Appeals in West Virginia confronted a similar situation in State Bancorp, Inc. v. United States Fidelity & Guaranty Insurance Co., 483 S.E.2d 228 (W. Va. 1997). In that case, an insurance policy defined "occurrence" as, similar to the Policy, "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id. at 232 (quotation marks omitted). Without a set definition of "accident," the court stated that, "[o]rdinarily, 'accident' is defined as 'an event occurring by chance or arising from unknown causes[.]'" Id. at 234 (quoting Webster's New Collegiate Dictionary 7 (1981)). The court then quoted the following definition of accident with approval:

> [a]n 'accident' generally means an unusual, unexpected and unforeseen event . . . . An accident is never present when a deliberate act is performed unless some additional unexpected, independent and unforeseen happening occurs which produces the damage. . . . To be an accident, both the means and the result must be unforeseen, involuntary, unexpected, and unusual.

Id. Applying that definition to the breach of contract claim alleged in the complaint, the court held that the insurer had no duty to defend because "a breach of contract which causes 'bodily injury' or 'property damage' is not an event that occurs by chance or arises from unknown causes, and, therefore, is not an 'occurrence.'" Id. In another case involving

the issue of whether an insurance policy that did not define "accident" covered claims, West Virginia Fire & Casualty Co. v. Stanley, the Supreme Court of Appeals of West Virginia, relying on the above-quoted language from State Bankcorp, stated that "accident" was an unambiguous term and "[t]he common and everyday meaning of 'accident' is a chance event or event arising from unknown causes." 602 S.E.2d at 492. The court then held "[t]his meaning does not include the kinds of deliberate acts alleged in the complaint," which included deliberate sexual assault and "the intentional torts of outrage, civil conspiracy and civil assault." Id.

Next, the Policy states that "'[b]odily injury' means bodily injury, sickness or disease sustained by a person including death resulting from any of these." Under West Virginia law, "absent some physical manifestation or physical contact, purely emotional distress allegations are insufficient to qualify as bodily injury" under an insurance policy. USF Ins. Co. v. Orion Dev. RA XXX, LLC, 756 F. Supp. 2d 749, 756 (N.D.W. Va. 2010) (citing Smith v. Animal Urgent Care, 542 S.E.2d 827, 830-31 (W. Va. 2000) and Tackett v. Am. Motorists Ins. Co., 584 S.E.2d 158, 166 (2003)).

Further, the Policy provides that "'[p]roperty damage' means damage to or loss of use of tangible property." With these provisions in mind, the Court will address whether Smith's and Woodward's claims can reasonably be interpreted such that the Policy covers them. See Pitrolo, 342 S.E.2d at 160.

### a. TILA

The TILA claims allege Matt's Auto World and Miller did not accurately disclose the finance charge, amount financed and annual percentage rate in the transactions in which Smith and Woodward purchased the vehicles. They seek actual and statutory damages.

These allegations concern the terms of the sale of the vehicles to Smith and Woodward. Thus, they concern harm stemming from contractual relationships, not harm that can reasonably be viewed as within the meaning of "property damage" or "bodily injury."

### b. WVCCPA

Smith and Woodward each assert a WVCCPA claim alleging violations of West Virginia Code § 46A-2-127, which proscribes making "any fraudulent, deceptive or misleading representation or means to collect or attempt to collect claims or to obtain information concerning consumers." Smith alleges Matt's Auto World and Miller violated this provision by stating she needed full automobile coverage or he would take the vehicle and requiring Smith to pay for tags and taxes when Smith had done so. Woodward alleges Matt's Auto World violated this statute by assuring her the vehicle was in good condition, attempting to convince her to commit insurance fraud, charging her for parts and labor not performed and not applying the warranty to repair attempts.

Woodward raises an additional WVCCPA claim, a violation of West Virginia Code § 46A-2-128, which prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any claim." Woodward asserts Matt's Auto World violated this provision by trying to convince her to commit insurance fraud or buy a different vehicle.

These violations base liability on alleged deliberate actions of the defendants. They cannot reasonably be interpreted as occurring by chance or arising from unknown causes to fall within the meaning of "accident." See W. Va. Fire & Cas. Co., 602 S.E.2d at 492. Further, because these claims allege only emotional and psychological damage, there are no allegations reasonably indicating these actions caused "property damage" or "bodily injury." See USF Ins. Co., 756 F. Supp. 2d at 756.

12

### c. Fair Debt Collection Act

The Fair Debt Collection Act claims assert Matt's Auto World and Miller violated 15 U.S.C. § 1692e(2)(A) by making false representations concerning "the character, amount, or legal status of any debt." Allegations of deliberate misrepresentations cannot reasonably be interpreted as an "accident." See W. Va. Fire & Cas. Co., 602 S.E.2d at 492. There also are no allegations reasonably indicating these statements caused "property damage" or "bodily injury" because, like before, Smith and Woodward allege only psychological and emotional harm. See USF Ins. Co., 756 F. Supp. 2d at 756.

### d. UCC

Next, Smith's UCC claim seeks actual and statutory damages because Miller and Matt's Auto World did not comply with the legal requirements for repossessing her vehicle. The alleged repossession is a deliberate act that does not fall within the meaning of "accident." See W. Va. Fire & Cas. Co., 602 S.E.2d at 492.

### e. Federal Odometer Act

The Federal Odometer Act claims allege the defendants violated 49 U.S.C. § 32705 by not creating an odometer disclosure on the titles to Smith's and Woodward's vehicles with the intent to defraud them. Because deliberate actions underlie these claims, they, too, do not constitute an "accident." See id. Further, there are no allegations reasonably showing that the failure to provide an odometer disclosure caused "property damage" or "bodily injury." Rather, these claims simply allege harm by virtue of violation of the statute.

### f. Breach of Contract and Breach of Express Warranty

Considering the breach of contract and breach of express warranty claims, even assuming that they caused "property damage" or "bodily injury" within the meaning of the

Policy, the Supreme Court of Appeals of West Virginia held that a breach of a contract "is not an event that occurs by chance or arises from unknown causes. State Bancorp, Inc., 483 S.E.2d at 234. Accordingly, these claims do not concern an "accident."

### g.     Conversion, Fraud, IIED and Conspiracy

Next, Smith raises four intentional tort claims–conversion, fraud, IIED and civil conspiracy–while Woodward raises the intentional tort of fraud. Because intentional torts are not an "accident" under an insurance policy, the Policy does not cover these claims. W. Va. Fire & Cas. Co., 602 S.E.2d at 492; see also Markel Ins. Co. v. Danieley, Civil Action No. 1:08-1445, 2010 WL 503094, at *4 (S.D.W. Va. Feb. 8, 2010) (holding that, under West Virginia law, civil conspiracy claim was "not an 'occurrence' under an insurance policy" because it was an intentional tort).

### h.     Constructive Fraud

Finally, as an alternative cause of action to the fraud claims, the constructive fraud claims allege Matt's Auto World and Miller innocently or negligently made various misrepresentations of fact concerning each contract's terms, each warranty's terms, Smith's and Woordward's right to keep their vehicles, Smith's and Woordward's right to a refund, work done to the vehicles and the amount owed for repairs. Smith and Woodward allege their reliance on these statements left them without vehicles and money paid to Matt's Auto World. They also aver they have suffered psychological and emotional harm.

Unlike fraud, constructive fraud is not an intentional tort because it "does not require proof of fraudulent intent." Stanley v. Sewell Coal Co., 285 S.E.2d 679, 683 (W. Va. 1981). However, the allegations underlying this claim cannot reasonably be interpreted as occurring by chance or arising from unknown causes so as to fall within the meaning of

14

"accident." See State Bancorp, Inc., 483 S.E.2d at 234. These claims are grounded in the same intentional statements made by Matt's Auto World and Miller that underlie the fraud claims. Under West Virginia law, the inclusion of negligence-type allegations as an alternative theory of recovery does not alter the nature of a claim that is based on non-accidental conduct. See Smith, 542 S.E.2d at 832 (finding that "negligence-oriented theory of recovery" was not "an 'occurrence' under an accident-based definition" because claim was based on non-accidental allegations of sexual harassment). Accordingly, the constructive fraud claim does not fall within the meaning of "accident."

In sum, because the claims raised in Smith's and Woodward's complaints do not concern an "accident," "property damage" or "bodily injury," or both, the Policy does not cover the conduct alleged in the state cases and National Liability has no duty to defend or indemnify Matt's Auto World or Miller in them.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** the Plaintiff's Motion to Strike and Motion for Default Judgment.

In accordance with Federal Rule of Civil Procedure 55(b)(2), the Court **ORDERS** that default judgment be entered against the Defendants Matt's Auto World Preowned Cars, LLC, Preston Miller, Sandy Woodward and Christine Smith inasmuch as the Plaintiff is entitled to declaratory judgment that there is no insurance coverage for Defendants Matt's Auto World Preowned Cars, LLC and Preston Miller under the Policy for the conduct alleged in Christine Smith v. Matt's Auto World Preowned Cars, LLC and Preston Miller, Civil Action No. 14-C-19 filed in the Circuit Court of Berkeley County, West Virginia on January 13, 2014 and Sandy Woodward v. Matt's Auto World Preowned Cars, LLC, Civil

Action No. 14-C-52 filed in the Circuit Court of Jefferson County, West Virginia on February 10, 2014 and inasmuch as the Plaintiff is entitled to a declaratory judgment that the Policy does not obligate the Plaintiff to defend or indemnify Defendants Matt's Auto World Preowned Cars, LLC and Preston Miller for any judgments awarded against them in Christine Smith v. Matt's Auto World Preowned Cars, LLC and Preston Miller, Civil Action No. 14-C-19 and Sandy Woodward v. Matt's Auto World Preowned Cars, LLC, Civil Action No. 14-C-52.

The Court **FURTHER ORDERS** that the Plaintiff is authorized to withdraw from its defense of Defendants Matt's Auto World Preowned Cars, LLC and Preston Miller in Christine Smith v. Matt's Auto World Preowned Cars, LLC and Preston Miller, Civil Action No. 14-C-19 and Sandy Woodward v. Matt's Auto World Preowned Cars, LLC, Civil Action No. 14-C-52.

The Court **DISMISSES** this action **WITH PREJUDICE** and **ORDERS** this action **STRICKEN** from this Court's active docket.

The Clerk is **DIRECTED** to enter Judgment in this matter.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED:** April 2, 2015

GINA M. GROH
CHIEF UNITED STATES DISTRICT JUDGE